## THE C. F. SARGENT.

(District Court, D. Washington, N. D. June 21, 1899.)

1. SEAMEN—ABANDONMENT OF SHIP—FAILURE TO PROVIDE PROPER QUARTERS.
   Seamen are not justified in leaving their ship before the expiration of their time of service on account of a failure to make their quarters comfortable, as required by law, where they made no complaint on that ground to the captain.

**2. SAME—UNSEAWORTHINESS.**

Seamen who have signed shipping articles, if they have reason to believe the vessel to be unseaworthy, may demand a survey; but they are not permitted to determine for themselves the question of seaworthiness, nor to leave the vessel on the ground of unseaworthiness without having required a survey.

**3. SAME—FORFEITURE OF WAGES.**

Shipping articles by which seamen contract to serve on a ship during a specified voyage, and until she reaches a certain port, not exceeding a stipulated term, constitute a lawful contract; and on a desertion of the ship by the seamen, without sufficient cause, before she reaches the port of discharge, or the expiration of the stated term of service, the penalty for which is a forfeiture of their wages for the time served, they are afforded no relief by the act of December 21, 1898.

Libel in rem to recover wages under a contract to serve as able seamen on a voyage from Tacoma to Honolulu; thence to San Francisco, the port of final discharge, either direct, or via one or more ports on the Pacific Coast, for a term of time not exceeding nine calendar months. The vessel proceeded on said voyage from Tacoma to Honolulu, where cargo was discharged, and returned in ballast from Honolulu to Seattle, where cargo was taken on for San Francisco. The libelants left the ship at Seattle without the master's consent, and they claim that, upon a proper construction of their contract, the voyage for which they shipped terminated on the arrival of the vessel at Seattle; and they also claim that they were not bound to proceed in the vessel to San Francisco, for the reason that the vessel leaked when loaded, and was in an unseaworthy condition.

M. M. Madigan, for libelants.

Wm. H. Gorham, for claimant.

HANFORD, District Judge. In the testimony and the argument there appears to have been a contention as to whether or not the forecastle where the men slept in the ship was heated and made comfortable as required by existing laws, but no complaint or request respecting that matter was made to the captain. Therefore, whatever the fact may be as to the actual condition of the sailors' quarters, the libelants were not justified in leaving the vessel on account of any such defect.

The libelants' demand, as set forth in their libel, is for the amount of wages which they respectively earned by service in the ship pursuant to their contract; and, as they have stated their case, it is simply a demand for wages. There is no question but what the libelants worked faithfully on the voyage from Tacoma to Honolulu, and while the vessel lay at Honolulu and on her return passage to Seattle, and only a part of the wages which they earned has been paid to them.

It is my opinion that the libelants were not justified in leaving the ship, without the master's consent, by reason of the unseaworthiness of the vessel. The vessel was in a leaking condition on the trip from Tacoma to Honolulu, and it was necessary for the crew to perform considerable labor in manning the pumps; but the vessel did not become water-logged, and she reached Honolulu in safety, and on the return trip to Seattle, when she was light, she took in very little water. After arrival at Seattle, and before the libelants left her, a

carpenter employed by the master located the leak and stopped it; and after taking on cargo a certificate of seaworthiness was given to the vessel by an agent of the underwriters, who is an experienced mariner, and who gave a careful examination, and found her to be in a seaworthy condition, and who has testified as a witness in this case that he did examine the ship, and that she appeared to him to be staunch and fit to go to sea, and that he would not have given the certificate if he had not believed that she could make the voyage to San Francisco safely. The United States inspector of hulls of steam vessels has also appeared as a witness in this case, and testified that he found the ship to be seaworthy. Under the circumstances shown by the uncontradicted evidence, the seamen were not authorized to determine the question as to the seaworthiness of the ship, and they cannot be relieved from their obligation to perform their contract, under the shipping articles which they have signed, on the ground of unseaworthiness. If they in good faith believed that it was unsafe for the ship to go to sea, they might have demanded a survey, which, if fairly made by competent persons, would be treated by the court as conclusive for the purpose of determining whether the men should or should not be discharged before completion of the voyage. Their claim that the men were entitled to leave the ship because they had been overworked on the run to Honolulu, and that they were, in consequence of overwork in manning the pumps, weary and in need of rest, has not been substantiated by the evidence. The vessel was 21 days on the run from Tacoma to Honolulu, and during part of that time the pumps were operated by a donkey engine. The crew did not man the pumps to exceed 8 or 9 days, and at no time were they required to work excessively. They exchanged watches regularly, as is customary on shipboard at sea, and they had ample time to recover from their weariness before they left the ship.

The contract contained in the shipping articles signed by the libelants provides for a term of service, and not merely for service upon a specified voyage. By said contract the libelants bound themselves to serve as mariners on board the C. F. Sargent on her contemplated voyage, and for a term described as follows:

"From the port of Tacoma to Honolulu, H. I., and back to San Francisco, Cal., as a final port of discharge, either direct, or via one or more ports on the Pacific Coast, for a term of time not exceeding nine calendar months."

This contract is worded to meet fairly and fully the requirements of section 4511, Rev. St. U. S., which prescribes that every agreement of seamen to serve in American vessels shall set forth definitely, among other things, "the nature and so far as practicable, the duration of the intended voyage or engagement, and the port or country at which the voyage is to terminate." The Occidental, 87 Fed. 485. This contract is certainly definite as to the duration of the engagement, and specifies the port of final discharge. It is a lawful contract, broken by the libelants by their having quit the service of the ship before her arrival at San Francisco, or the expiration of the term of nine months, without the master's consent; and the penalty for the breach of their contract is forfeiture of their wages.

On behalf of the libelants it is urged that they be relieved from the

penalty of forfeiture of their wages, by reason of the fact that at the time of their leaving the vessel other competent seamen could be readily secured at Seattle to take their places.    But the law does not make an exception, or leave the matter in the discretion of the court. The master had a perfect right to exact of these libelants full performance of their contract, and to refuse to pay their wages before the arrival of the ship at San Francisco.    If the libelants had not become deserters by leaving the ship without the master's consent, they would have been entitled, after the loading of the ship at this port, to receive one-half of the wages earned up to that time, under the provisions of section 4530, Rev. St. U. S., as amended by the act entitled "An act to amend the laws relating to American seamen, for the protection of such seamen, and to promote commerce," approved December 21, 1898; but, having incurred a forfeiture of all of their wages, this statute affords them no ground for relief.    A decree will be entered dismissing the libel.